IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| MORIA R., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 2:24-cv-00227-Z-BT |
| | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Plaintiff Moria R.'s[1] civil action under 42 U.S.C. § 405(g)

seeking judicial review of a final adverse decision by the Commissioner of Social

Security. Compl., ECF No. 1. For the reasons explained, the District Judge should

AFFIRM the Commissioner's decision.[2]

---

[1] The Court uses only Plaintiff's first name and last initial as instructed by the May 1, 2018, Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] This case was automatically referred to the undersigned with a designation to exercise the district court's full jurisdiction and conduct all proceedings in this case upon the consent of the parties. *See* Special Order No. 3-350. As Plaintiff did not consent to the undersigned exercising the court's full jurisdiction over this case, *see* ECF No. 6, this case was reassigned to a United States District Judge for the Northern District of Texas and referred to the undersigned per Special Order 3 for findings of fact, conclusions of law, and a recommendation for the disposition of the case.

## Background

Plaintiff alleges that she has been disabled since August 1, 2017, due to a variety of impairments, including Ehlers-Danlos syndrome; joint instability in her neck, hips, ribs, and fingers; carpal tunnel in both hands; ulnar nerve compression in her right elbow; large ganglion cyst; hypothyroidism; chronic fatigue; autonomic nervous system disorder/dysautonomia; anxiety disorder with PTSD; and obsessive compulsive disorder (OCD). Admin. R., ECF No. 12-1 at 108, 226. 267.[3] She has a high school education, two years of college attendance, and past relevant work as a waitress, janitor, customer service representative, caregiver, and nanny. Admin. R., ECF No. 12-1 at 37, 268.

Plaintiff applied for disability insurance benefits under Title II of the Social Security Act in April 2022. Admin. R., ECF No. 12-1 at 21. Her claim was denied initially and on reconsideration. Admin. R., ECF No. 12-1 at 107, 120. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge (ALJ), who conducted a telephonic administrative hearing on January 31, 2024. Admin. R., ECF No. 12-1 at 21, 46-81.

The ALJ found Plaintiff was not disabled from August 1, 2017, her alleged onset date, through December 31, 2023, her date last insured, and thus not entitled to disability benefits. Admin. R., ECF No. 12-1 at 22, 39. Utilizing the five-step

---

[3] Citations to the record refer to the CM/ECF page number at the top of each page rather than page numbers at the bottom of each filing.

sequential evaluation,[4] the ALJ first found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. Admin. R., ECF No. 12-1 at 23-24. At the second step, the ALJ noted that Plaintiff suffers from Ehlers-Danlos syndrome (hypermobile type), fibromyalgia, major depressive disorder, generalized anxiety disorder, OCD, and PTSD, and that those impairments are "severe." Admin. R., ECF No. 12-1 at 24. At the third step, he determined that Plaintiff's severe impairments do not meet or medically equal any listed impairment in Appendix 1 of the Social Security Regulations. Admin. R., ECF No. 12-1 at 24.

Before proceeding to the fourth step, the ALJ found that Plaintiff retained the residual functional capacity (RFC):

> to perform "sedentary" work as defined in 20 CFR 404.1567(a) with occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; frequent balancing; occasional stooping, kneeling, crouching, and crawling; frequent reaching, handling, and fingering

---

[4] "In evaluating a disability claim, the [ALJ] conducts a five-step sequential analysis to determine whether (1) the [plaintiff] is presently working; (2) the [plaintiff] has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the [plaintiff] from doing past relevant work; and (5) the impairment prevents the [plaintiff] from doing any other substantial gainful activity." *Audler v. Astrue,* 501 F.3d 446, 447-48 (5th Cir. 2007). The plaintiff bears the initial burden of establishing a disability through the first four steps of the analysis; at the fifth step, the burden shifts to the ALJ to show that there is other substantial work in the national economy that the plaintiff can perform. *Id.* at 448; *Copeland v. Colvin,* 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted). A finding that the plaintiff is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Copeland,* 771 F.3d at 923 (citing *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995)); *Lovelace v. Bowen,* 813 F.2d 55, 58 (5th Cir. 1987) (citing *Barajas v. Heckler,* 738 F.2d 641, 643 (5th Cir. 1984) (per curiam)).

bilaterally; and avoidance of frequent exposure to extreme heat, extreme cold, unprotected heights, and dangerous machinery. She could understand, remember, and carry out simple and some detailed tasks, and make related decisions. She could concentrate for extended periods with routine work breaks. She could interact appropriately with supervisors and coworkers on a superficial work basis to learn tasks and accept criticism. She could have tolerated incidental interaction with the general public where frequent conversation or communication is not required. She could respond to changes in a routine work setting which are gradually introduced and infrequent.

Admin. R., ECF No. 12-1 at 26.

At step four, with the assistance of vocational expert (VE) testimony, the ALJ determined that Plaintiff was unable to perform her past relevant work but could perform other work that exists in significant numbers in the national economy, including as a document preparer (65,000 jobs in the national economy), touch up screener (22,000 jobs in the national economy), and semiconductor bonder (30,000 jobs in the national economy). Admin. R., ECF No. 12-1 at 37-38. Therefore, the ALJ found that Plaintiff was not disabled and not entitled to benefits. Admin. R., ECF No. 12-1 at 39.

Plaintiff appealed the ALJ's decision to the Appeals Council and provided additional evidence. Admin. R., ECF No. 12-1 at 6-8. The Appeals Council found that the appeal did not provide a basis for modifying the ALJ's decision. Admin. R., ECF No. 12-1 at 6. Plaintiff then filed this action in federal district court seeking judicial review under 42 U.S.C. § 405(g).

## Legal Standard

The Court's "review of Social Security disability cases 'is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the [ALJ] applied the proper legal standard.'" *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (quoting *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir 2012) ("Substantial evidence is merely enough that a reasonable mind could arrive at the same decision; though the evidence 'must be more than a scintilla, it need not be a preponderance.'").

The ALJ, and not the courts, resolves conflicts in the evidence; the Court may not "reweigh the evidence or try the issues de novo." *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (per curiam). Hence, the Court may not substitute its own judgment for the ALJ's, and it may affirm only on the grounds that the Commissioner stated to support the decision. *Copeland*, 771 F.3d at 923. If the Commissioner's findings are supported by substantial evidence, the findings are conclusive, and the Commissioner's decision must be affirmed. *Martinez*, 64 F.3d at 173. A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

Nevertheless, the substantial evidence review is not an uncritical "rubber stamp" and requires "more than a search for evidence supporting the [ALJ's] findings." *Hill v. Saul*, 2020 WL 6370168, at *6 (N.D. Tex. Sept. 29, 2020) (quoting *Martin v. Heckler*, 748 F.2d 1027, 1031 (5th Cir. 1984)), *adopted by* 2020 WL 6363878 (N.D. Tex. Oct. 29, 2020) (Lindsay, J.). The Court "must scrutinize the record and take into account whatever fairly detracts from the substantiality of the evidence supporting" the ALJ's decision. *Id.* (quoting *Martin*, 748 F.2d at 1031). A no-substantial-evidence finding is appropriate only if there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Id.* (citation omitted).

## Analysis

Plaintiff raises two arguments on appeal. First, she contends that the ALJ's determination that she was not disabled is not supported by substantial evidence because the ALJ "improperly evaluat[ed] and then reject[ed] the opinion of [her] treating doctor," Trey Bowen, M.D. Pl.'s Br., ECF No. 16 at 2, 8. Second, she contends the ALJ erred as a matter of law by failing to identify jobs at step 5 of the sequential analysis that exist in significant numbers. Pl.'s Br., ECF No. 16 at 2, 8, 20. In response, the Commissioner argues the ALJ applied the proper legal standards in evaluating the record evidence and that the ALJ's decision must be affirmed as supported by substantial evidence. Def.'s Br., ECF No. 20 at 9.

**A. The ALJ properly considered Dr. Bowen's opinions.**

Plaintiff contends that the ALJ's evaluation of Dr. Bowen's medical opinions was legally inadequate under the standard set forth at 20 C.F.R. § 404.1520c. Pl.'s Br., ECF No. 16 at 2, 8, 11-18.

Under the current regulations, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a); *Webster*, 19 F.4th at 719 ("ALJs are no longer required to give controlling weight to a treating physician's opinion, as was mandated by federal regulations and our caselaw in the past."). However, the ALJ must consider all "medical opinions" for their "persuasiveness" using the factors outlined in the rule. 20 C.F.R. § 404.1520c(a). These factors include supportability, consistency, relationship with the claimant, length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, examining relationship, specialization, and other factors such as whether the medical source has familiarity with the other evidence in the claim. *Id.* § 404.1520c(c). The most important factors are supportability and consistency. *Id.* "While supportability measures the degree of relatedness between a medical provider's opinion and the medical evidence she provides to support that opinion, consistency is an all-encompassing inquiry, which focuses on how well a medical source is supported, or not supported, by the entire record." *Linda M. v. Comm'r, Soc. Sec. Admin.*, 2022 WL 4125095, at *3 (N.D. Tex. Sept. 8, 2022) (Toliver, J.) (internal quotation marks and citation omitted); *see also Sharon H. v.*

*Kijakazi*, 2022 WL 3951488, at *3 (N.D. Tex. Aug. 31, 2022) (Hendrix, J.) ("[S]upportability looks internally to the bases presented by the medical opinion itself" while "consistency is an external inquiry that juxtaposes a medical opinion to other evidence in the record, including opinions of other medical professionals.").

The ALJ also must "articulate in [her] decision how persuasive [she] finds all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." 20 C.F.R. § 404.1520c(b). Further, the ALJ must "explain how [she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings." *Id.* § 404.1520c(b)(2). She may, but need not, explain how she considered the remaining factors. *Id.* The articulation requirement is to "allow a subsequent reviewer or reviewing court to trace the path of an [ALJ]'s reasoning." 82 Fed. Reg. 5858 (Jan. 18, 2017). An ALJ commits legal error when she fails to address or even mention a medical opinion in the record without explanation. *Kneeland v. Berryhill*, 850 F.3d 749, 759 (5th Cir. 2017); *see also Webster*, 19 F.4th at 718 ("An ALJ usually cannot reject a medical opinion without some explanation."); *Amanda J. v. Saul*, 2020 WL 4697880, at *3 (N.D. Tex. Aug. 13, 2020) (Boyle, J.) ("[A]n ALJ commits error when he fails to address or mention a medical opinion—irrespective of whether the ALJ could have rejected it.").

"There is limited case law concerning what constitutes a sufficient 'explanation' of supportability and consistency under 20 C.F.R. §

8

404.1520c(b)(2)." *Lara v. Kijakazi*, 2022 WL 4486085, at *12 (N.D. Tex. Aug. 29, 2022) (Ramirez, J.) (citations omitted) (cleaned up), *adopted by* 2022 WL 4485826 (N.D. Tex. Sept. 27, 2022) (Lindsay, J.). "Generally, there are no formalistic rules governing how an ALJ must articulate his decision." *Hubbard v. Comm'r of Soc. Sec.*, 2022 WL 196297, at *4 (N.D. Tex. Jan. 21, 2022) (Ray, J.) (citation omitted). "District courts in the Fifth Circuit have held that the current standard for consideration of medical source opinions requires an ALJ to articulate a discernible logical bridge between the evidence and the ALJ's persuasiveness finding." *Nunley v. Kijakazi*, 2023 WL 2386747, at *4 (S.D. Tex. Mar. 6, 2023) (citation omitted) (cleaned up). "At a minimum, the ALJ's discussion must give enough reasons to permit meaningful judicial review." *Hubbard*, 2022 WL 196297, at *4.

On August 7, 2023, Dr. Bowen issued several opinion forms regarding Plaintiff: a Pain Medical Source Statement (Admin. R., ECF No. 12-2 at 446, Ex. C13F); a Chronic Fatigue Syndrome Medical Source Statement (Admin. R., ECF No. 12-1 at 447-50, Ex. C14F); and an Ehlers-Danlos Syndrome Medical Source Statement (Admin. R., ECF No. 12-1 at 451-454, Ex. C15F).

In one opinion form, Dr. Bowen opined that "[p]ain is present to such an extent as to be distracting to adequate performance of daily activities, and that physical activity, such as walking, standing, bending, stooping, moving of" extremities, would result in "greatly increased pain and to such a degree as to cause distraction from task or total abandonment of tasks." Admin. R., ECF No. 12-2 at

446. Dr. Bowen also opined that Plaintiff's pain and/or drug side-effects would limit Plaintiff's effectiveness to perform work activities "due to distraction, inattention, drowsiness, etc." Admin. R., ECF No. 12-2 at 446.

In other opinion forms, he diagnosed Plaintiff with chronic fatigue syndrome, Ehlers-Danlos syndrome, fibromyalgia, dysautonomia, brain fog, cervicalgia (neck pain), gait instability, and characterized her prognosis as "poor in terms of sleep/fatigue (no improvement)." Admin. R., ECF No. 12-2 at 447, 451. He indicated Plaintiff can only sit and stand for 30 minutes at one time; sit/stand/walk a total of 4 hours in an 8-hour day; needed to walk 5 minutes every 30 minutes; and could occasionally twist, and rarely stoop (bend), crouch, or squat. Admin. R., ECF No. 12-2 at 448-49, 452.

Further, Dr. Bowen opined Plaintiff could look up or down (sustained neck flexion) occasionally; grasp, turn, or twist objects with hands only 50% of an 8-hour day; perform fine manipulations (fingers) only 10% of an 8-hour day; reach in front only 75% of an 8-hour day, and reach overhead only 10% of an 8-hour day. Admin. R., ECF No. 12-2 at 449, 453. He noted that, if all other accommodations were provided, Plaintiff would be off task 5% of the day; he also opined that her anxiety limits her ability to cope with high stress, her impairments would likely produce "good days" and "bad days," and she would likely be absent as a result of her impairments about two days per month. Admin. R., ECF No. 12-2 at 449, 454. Dr. Bowen indicated Plaintiff's "gait instability requiring use of bilateral canes",

and that Plaintiff suffers "constant daily pain (average 6/10), finger pain limits ability to use hands for long periods." Admin. R., ECF No. 12-2 at 452.

The ALJ deemed Dr. Bowen's form opinions "unpersuasive," finding them "unsupported" and "inconsistent with other evidence in the record . . . ." Admin. R., ECF No. 12-1 at 34-35. The ALJ provided the following explanation with respect to the lack of supportability of Dr. Bowen's opinions:

> [Dr. Bowen's] own medical records fail to substantiate the statements he made in the opinion forms. (*See* Exhibits C7F, C8F, and C16F). Indeed, [in] his medical records from July 13, 2023, the month prior to his completion of the opinion forms, he noted the claimant's history of reporting that, prior to diagnosis of Ehlers-Danlos syndrome, providers attributed the claimant's symptoms to psychosomatic complaints, but "once she actually started receiving treatment for the manifestations of [Ehlers-Danlos syndrome], she experienced significant improvement in her health." (Exhibit C16F/3). On examination, Dr. Bowen found that the claimant was in no acute distress. (Exhibit C16F/4). He noted that she was using a cane for gait, (*see* Exhibit C16F/5), but found that she was otherwise within normal limits on examination. (*See* Exhibit C16F/4-5). There is no indication that the claimant complained to Dr. Bowen of the symptoms or medication side effects that he recorded in his opinion forms, (*see* Exhibit C16F/3-5), and, though he noted that there was concern for sleep apnea, (*see* Exhibit C16F/3, 5), he did not record somnolence on examination, (*see* Exhibit C16F/4-5), nor did he diagnose the claimant with chronic fatigue syndrome. (*See* Exhibit C16F/5). Moreover, contradicting his statements as to the claimant's pain level, not only did he record that she was in no acute distress, (*see* Exhibit C16F/4), but he also refilled her pain medications with no changes, indicating their efficacy. (*See* Exhibit C16F/5).

Admin. R., ECF No. 12-1 at 35.

With respect to inconsistency with other evidence in the record, the ALJ provided the following explanation:

> Dr. Bowen's opinions are also inconsistent with other evidence in the record, including, but not limited to, the normal strength and nonfocal neurological examination findings, the claimant's reports of improvement in physical symptoms with treatment, her rarely, if ever, being in acute distress, (*see* Exhibits C1F, C5F, C6F, C7F, C8F, C9F, C10F, C12F, C16F, and C17F), the unremarkable x-rays, (*see* Exhibits C8F/46-47, 52-54 and C9F/3), and the lack of neck injury. (*See* Exhibit C7F/62).

Admin. R., ECF No. 12-1 at 35.

To support her argument that the ALJ failed to adequately explain the supportability and consistency factors in his decision, Plaintiff points to a handful of cases in which district courts have reversed and remanded an ALJ's decision because of failure to address either the consistency or supportability factors, or failure to adequately address these factors, thereby requiring the court to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof. *See* Pl.'s Br., ECF No. 16 at 11-18 (and cases cited therein). By contrast, in this case the ALJ's decision specifically addresses both supportability and consistency and considers these factors by citing to specific evidence. *See* Admin. R., ECF No. 12-1 at 35. And, "[c]ourts have found that citations to specific evidence in the record constitute an adequate articulation of the supportability and consistency factors." *Morgan v. Kijakazi*, 2023 WL 6238052, at *6 (E.D. Tex. Aug. 31, 2023), *adopted by* 2023 WL 6221773 (E.D. Tex. Sept. 25, 2023) (collecting cases); *see, e.g.*, *Leslie G. v. Comm'r, Soc. Sec. Admin.*, 2022 WL 19518463, at *4 (N.D. Tex. Sept. 27, 2022) (Reno, J.), *adopted sub nom. Leslie G. v. Kijakazi*, 2023

WL 2536111 (N.D. Tex. Mar. 16, 2023) (Hendrix, J.); *Lara*, 2022 WL 4486085, at *13.

Plaintiff also contends that the ALJ improperly ignored evidence consistent with Dr. Bowen's opinion and the fluctuating nature of her impairments and pain. *See* Pl.'s Br., ECF No. 16 at 11-18.  But "[t]he ALJ's failure to mention a particular piece of evidence does not necessarily mean that he failed to consider it[.]" *Hammond v. Barnhart*, 124 F. App'x 847, 851 (5th Cir. 2005). And contrary to Plaintiff's assertions, the ALJ states that he considered the entire record. *See* Admin. R., ECF No. 12-1 at 23, 26. Further, while Plaintiff asserts that the ALJ did not consider progress notes from her March 30, 2023 visit, *see* Pl.'s Br., ECF No. 16 at 14, the ALJ specifically references these notes in his supportability and consistency discussions. Admin. R., ECF No. 12-1 at 35 (citing Ex. C8F).

Regardless, Plaintiff's argument misses the mark. Whether or not the ALJ "ignored" the above-mentioned evidence, Plaintiff asks the Court to substitute its judgment for the ALJ's, which the Court may not do. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). The argument that the evidence the ALJ "ignored" contradicts the ALJ's finding is essentially a request that the Court reweigh the evidence and assign more weight or a different meaning to individual medical reports, diagnoses, or other pieces of evidence than the ALJ did. This is not a proper challenge to the ALJ's RFC. Rather, it is an argument that the ALJ did not give enough weight to those parts of the record. "These are precisely the kinds of

determinations that the ALJ is best positioned to make." *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

Instead, the Court's inquiry is limited to whether the ALJ sufficiently articulated his finding that Dr. Bowen's opinions were unpersuasive such that the Court may find substantial evidence that supports the Commissioner's decision. In this case, rather than "cherry picking," the ALJ articulated his reasons for rejecting Dr. Bowen's opinions sufficiently to permit judicial review, considering both the supportability and consistency of the opinions in light of other evidence in the record. Accordingly, the ALJ in his broad discretion properly rejected Dr. Bowen's opinions. Because "[c]onflicts in the evidence are for the Commissioner and not the courts to resolve," the Court will not second guess the ALJ's determination of the weight to be afforded Dr. Bowen's opinions compared to the rest of the evidentiary record. *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Considering the clarity of the ALJ's explanation and the degree to which he supported his conclusion with references to specific evidence in the record, substantial evidence supports the Commissioner's conclusion, and reversal is not required.

### B. Substantial evidence supports the ALJ's step five jobs determination.

Plaintiff argues the ALJ's decision must be reversed because there are not a significant number of jobs that exist in the national economy that she can perform with the RFC found by the ALJ. Pl.'s Br., ECF No. 16 at 20-25. Specifically, she

contends the jobs the ALJ found she could perform were either obsolete or inconsistent with her RFC, or do not exist in significant numbers in the region where she lives. *Id.*

The ALJ found, in pertinent part, that Plaintiff retained the RFC "to perform sedentary work with . . . avoidance of frequent exposure to extreme heat . . . and dangerous machinery. She could understand, remember, and carry out simple and some detailed tasks, and make related decisions." Admin. R., ECF No. 12-1 at 26. In response to hypotheticals from the ALJ, the VE testified that an individual with Plaintiff's RFC could work as a document preparer (65,000 jobs in the national economy), touch up screener (22,000 jobs in the national economy), and semiconductor bonder (30,000 jobs in the national economy). Admin. R., ECF No. 12-1 at 37-38, 78-80. The ALJ relied on the VE's testimony in finding that, "considering [Plaintiff's] age, education, work experience, and [RFC], Plaintiff could perform other work that exists in significant numbers in the national economy," including as a document preparer (65,000 jobs in the national economy), touch up screener (22,000 jobs in the national economy), and semiconductor bonder (30,000 jobs in the national economy). Admin. R., ECF No. 12-1 at 38-39.

At step five, a claimant who cannot return to his or her past work is not disabled if he or she has the RFC to engage in work available in the national economy. 20 C.F.R. § 404.1520(f). The Commissioner bears the burden at step five of showing "substantial work in the national economy that the claimant can

perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). The applicable regulation requires that "other work (jobs) that [the claimant] can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country)." 20 C.F.R. § 404.1560(c)(1). The Commissioner is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [his or her] [RFC] and vocational factors." *Id.* § 404.1560(c)(2).

In establishing work that exists in significant numbers in the national economy, the ALJ may rely on a VE's testimony in response to hypothetical questions or on the "the Grids," the Medical-Vocational Guidelines promulgated for this determination. *See Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); 20 C.F.R. Pt. 404, Subpt. P, App. 2.

However, once the Commissioner has made the requisite showing at step five "the burden shifts back to the claimant to rebut this finding." *Newton*, 209 F.3d at 453 (finding burden shifts back to claimant after Commissioner has made requisite showing at step five).

### 1. *Document Preparer Job*

Plaintiff first objects that the occupation of document preparer is obsolete. Pl.'s Br., ECF No. 16 at 21.

On June 22, 2024, the Social Security Administration issued an "Emergency Message" imposing heightened requirements on ALJs considering certain

representative occupations "whose continued widespread existence multiple courts have questioned." *See* Emergency Message EM-24027, PolicyNet/Instructions Updates/EM-24027 REV: Guidance Regarding the Citation of Certain Occupations at Step Five of the Sequential Evaluation Process, at https://secure.ssa.gov/apps10/reference.nsf/links/01062025092030AM (last visited Sept. 5, 2025). When faced with one of the designated occupations, the ALJ is required to obtain additional evidence that the occupation's requirements, as presently performed, are consistent with the claimant's RFC and that the position still exists in the national economy in numbers that alone, or in combination with other representative occupations, are significant. *See id.* The Emergency Message recognizes document preparer (one of the positions identified by the VE in this case) as a potentially obsolete occupation. *See id.*

Nonetheless, the Court agrees with the Commissioner and finds that the ALJ satisfied his heighted duty of inquiry regarding the document preparer position. *See* Def.'s Br., ECF No. 20 at 6. The ALJ specifically asked the VE whether the document preparer position was "still performed as . . . listed in the DOT" or whether there have "been any changes." Admin. R., ECF No. 12-1 at 78. The VE testified that the position was performed somewhat differently based on technological changes, but testified that in her expert opinion, even after considering the "technology changes," a hypothetical individual with Plaintiff's RFC could perform this sedentary occupation. Admin. R., ECF No. 12-1 at 78-79. She also testified that the position remains available in significant numbers in the

17

national economy. Admin. R., ECF No. 12-1 at 78. Notably, the ALJ in his written decision discussed this issue, explaining that there is a difference between the document preparer occupation as defined by DOT and as currently performed, and found the "vocational expert's knowledge as to the vocational issues to be sufficient to resolve these conflicts, the proper foundation for her testimony being laid." Admin. R., ECF No. 12-1 at 38.

Plaintiff also argues that because the document preparer job has a reasoning level of 3 per the DOT, Plaintiff's RFC would have eliminated the job. Pl.'s Br., ECF No. 16 at 22. Here, the ALJ's finding did not limit Plaintiff to only simple tasks but also included an ability to carry out "some detailed tasks and make related decisions." Admin. R., ECF No. 12-1 at 21. The DOT defines level 3 reasoning as the ability to "[a]pply commonsense understanding furnished in written, oral, or diagrammatical form [and to d]eal with problems involving several concrete variables in or from standardized situations." DOT, App. C, § III, 1991 WL 688702. Because the RFC finding included Plaintiff's ability to perform some detailed tasks, in addition to simple tasks, Plaintiff has not shown that the ALJ erred in his reliance on this job.

In addition, as the Commissioner correctly points out, "the ALJ undertook to resolve conflicts between the VE's testimony and the DOT regarding job mental functions, as required by SSR 004p. *See* Def.'s Br., ECF No. 20 at 7. In this regard, the ALJ stated:

> I note that the DOT also does not directly address some of the mental residual functional limitations, including, but not limited to, what constitutes "superficial" or "incidental" interaction, what constitutes a routine work setting, and frequency of workplace changes. I find the vocational expert's knowledge as to the vocational issues to be sufficient to resolve these conflicts, the proper foundation for her testimony being laid.

Admin. R., ECF No. 12-1 at 38. Thus, the ALJ complied with the directive of SSR 00-4p, which was still in effect at the time of the ALJ's decision, by resolving any apparent conflicts with job mental functions that may have existed. Admin. R., ECF No. 12-1 at 38. *See* SSR 00-4p, 2004 WL 1898704 (S.S.A.).

In the alternative, even if the position of document preparer is considered obsolete or inconsistent with Plaintiff's RFC, for the reasons discussed directly below, any such error is harmless as the ALJ's step five analysis is sufficiently supported by the other two positions identified by the VE (touch up screener and semiconductor bonder), neither of which are included on the list of potentially obsolete occupations identified in the Emergency Message.

### 2. *Semiconductor Bonder and Automatic Bonding Machine Jobs*

Plaintiff also argues that the semiconductor bonder job which uses an automatic bonding machine and the touch-up screener job which uses wire cutters and soldering irons per the DOT, conflict with the RFC finding that Plaintiff should avoid "frequent exposure to extreme heat . . . and dangerous machinery" (Admin. R., ECF No. 12-1 at 26). Pl.'s Br., ECF No. 16 at 23. In response, the Commissioner contends that "other than Plaintiff's subjective opinion, she has failed to demonstrate that a bonding machine, wire cutters, or a soldering iron would

constitute 'dangerous machinery' in contravention of the RFC." Def.'s Br., ECF No. 20 at 8. The Court agrees.

According to the Dictionary of Occupational Title entries for both jobs, neither job involves being around moving mechanical parts, describing the activity as "Moving Mech. Parts: Not Present - Activity or condition does not exist." *See* Touch-up Screener, DOT # 726.684-110, 1991 WL 679616 (G.P.O.); Semiconductor Bonder, DOT # 726.685-066, 1991 WL 679631 (G.P.O.). Further, Plaintiff fails to show that any exposure would exceed the "frequent" exposure as allowed for in the RFC finding.

On this record, the Court agrees with the Commissioner that Plaintiff has failed to show an apparent conflict with the RFC and has failed to carry her burden of showing she could not perform the jobs identified by the ALJ at step five. *See* SSR 00-4p; *Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999) (noting that once the ALJ identifies jobs within the claimant's abilities, the burden shifts back to the claimant to rebut this finding).

### 3. *Significant Numbers*

The Social Security regulations provide that the phrase, jobs "existing in the national economy," does not encompass the entire United States, but rather, the Commissioner considers "that work exists . . . in significant numbers when it exists in significant numbers either in the region where you live or in several other regions of the country . . . Isolated jobs that exist in only very limited numbers in relatively few locations outside of the region where you live are not considered

'work which exists in the national economy.'" 20 C.F.R. § 404.1566. However, "it does not matter whether . . . [w]ork exists in the immediate area in which you live." *Id.*

"The Fifth Circuit has not established a bright-line rule for what constitutes 'significant numbers' of jobs, nor has the court set forth a test for this determination." *Gretta H. v. Kijakazi*, 2022 WL 18107079, at *4 (N.D. Tex. Dec. 30, 2022) (Rutherford, J.). In *Lirley v. Barnhart*, the Fifth Circuit affirmed the Commissioner's decision based on VE testimony, that claimant was not disabled because claimant could perform 50,000 jobs in the national economy. *Lirley v. Barnhart*, 124 F. App'x 283-84 (5th Cir. 2005) (per curiam). But, there was no indication that 50,000 was the minimum needed to be significant. *See id.*

In the absence of clear guidance from the Fifth Circuit, some district courts in this Circuit have adopted a test outlined by the Sixth Circuit in *Hall v. Bowen*, where a number of factors are considered in determining whether significant numbers of jobs exist that a claimant can perform, such as "the level of claimant's disability; the reliability of the [VE]'s testimony; the reliability of the claimant's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on." *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988); *see also Escatel v. Colvin*, 2015 WL 2379113, at *7 (N.D. Tex. May 18, 2015) (Boyle, J.) (collecting cases) (citing *Caronia v. Colvin*, 2013 WL 5192904, at *7 (N.D. Tex. 2013) (Means, J.) (applying *Hall* and finding 2,000 to 3,000 jobs in Texas and 50,000 in national

economy sufficient)); *Thompson v. Astrue*, 2010 WL 2816677, at \*7 (N.D. Tex. 2010) (Kaplan, J.) (applying the *Hall* factors and finding that 105,000 jobs in the national economy was sufficient), *adopted by* 2010 WL 2816680 (N.D. Tex. 2010) (Fish, J.); *see also Duncan v. Saul*, 2020 WL 6120472, at \*15 (N.D. Tex. Sept. 10, 2020) (Ramirez, J.) (finding that 25,000 jobs nationally for inspector, hand packager, as well as 35,000 jobs nationally for bakery worker was sufficient), *adopted by* 2020 WL 6064359 (N.D. Tex. Oct. 14, 2020) (Scholer, J.); *Jones v. Kijakazi*, 2022 WL 5082277, at \*12 (S.D. Miss. Aug. 8, 2022), *adopted by* 625 F. Supp. 3d 549 (S.D. Miss. 2022) (finding a cumulative total of 51,649 jobs in the national economy a "significant number").

Here, the existence of 117,000 jobs certainly qualifies as a significant number under Fifth Circuit precedent. Even were the Court to rule out the job of document preparer, the Fifth Circuit does not require procedural perfection, but requires the Plaintiff to show that she was actually prejudiced by the mistake. *See Audler*, 501 F.3d at 448. Here, the VE testified that someone with the same RFC as Plaintiff could perform the jobs of touch up screener (22,000 jobs in the national economy) and semiconductor bonder (30,000 jobs in the national economy), which equates to 52,000 jobs in the national economy that Plaintiff could perform. Admin. R., ECF No. 12-1 at 38-39. Based on the above-cited case law and section 404.1566, the Court concludes that this is a significant number. Accordingly, substantial evidence exists to support the ALJ's decision that there are a significant

number of jobs in the economy that Plaintiff can perform and reversal is not required on this basis.

### Recommendation

For the reasons stated, the Court should AFFIRM the Commissioner's decision.

**SO RECOMMENDED.**

September 5, 2025.

_____

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Svcs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).